UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LLOYD D. SLABAUGH,

       Plaintiff,                      CIVIL ACTION NO. 02-74076

       v.                                DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF                MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

       This is an action for judicial review of the defendant's decision denying plaintiff's application for a closed period of Social Security disability benefits. Plaintiff, a college graduate with past relevant work in management and assembly occupations and born in 1964, was 39 years old when the ALJ rendered the opinion denying disability. Plaintiff alleged that he became disabled September 8, 1999, due to depression, osteomyelitis, and staph infection of the left hip, hip pain and left hip replacement. Plaintiff states that he was disabled between September 19, 1999 through July, 2003. Plaintiff returned to work in August, 2003. His insured status extends through December 31, 2006.

       Plaintiff alleges that he was unable to work due to a major depressive disorder and osteomyelitis with staph infection and septic arthritis, beginning in 1999. He contends that due to his pain, depression, treatment, and medication he was prevented from being attentive to task for 70 to 80 percent of the day and that he was disabled during that time. For the reasons discussed in this Report, it is recommended that defendant's motion be granted, that the plaintiff's motion be denied, and that the decision denying benefits be affirmed.

- 1 -

Plaintiff's first hearing on his application for benefits was in February 2002 before an ALJ who entered an unfavorable decision in April 2002. The decision determined that plaintiff could not perform his past relevant work but could perform a limited range of sedentary work and had transferable skills to such work. Plaintiff appealed to U.S. District Court in October, 2002. Before an answer to the complaint was filed, the parties agreed to remand the claim pursuant to Sentence 6 of 42 U.S.C. § 405(g). The purpose of remand was for the ALJ to consider and explain the opinions of Dr. Bruce Johnson, D.O., and Linda Bartoll, MSW. The Appeals Council remanded the claim on August 11, 2003. A remand hearing was conducted by the same ALJ on December 20, 2004. An unfavorable decision was issued July 28, 2005. The decision noted that plaintiff's diagnosis was major depressive disorder, with a GAF which was assessed by Bartoll as 52. The ALJ concluded that plaintiff could perform simple, routine tasks, low stress jobs with limited contact with supervisors, co-workers, and the public.

## I. Legal Standards

### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is

substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## II. Analysis

### A. Background

In 1999, plaintiff experienced a staph infection which caused him extreme pain to his groin and back. (Tr. 378-79) He was admitted to the hospital six weeks after the infection began and underwent surgery. He was bedridden for six months. (Tr. 379-80) He then used crutches regularly for a few months and occasionally thereafter. The pain was such that he was often required to lie down during the day when it was "searing" or "grinding." Plaintiff was placed on work restrictions by his doctor in 2000 and was limited to a sit-down job only. (Tr. 385) In 2001, he attempted to return to classes at Goodwill Industries but the pain interfered with his ability to concentrate. (Tr. 382) He also tried to return to work but he was depressed, had trouble sitting and was limited in his walking. (Tr. 384-399) He was also going through a divorce. Plaintiff underwent hip replacement surgery in January, 2003, and ultimately returned to work in August, 2003. (Tr. 398)

Plaintiff had a hearing in February, 2002, and in December, 2004. Defendant does not dispute that plaintiff was status post osteomyelitis of the left hip and had depression. At the December, 2004 hearing, the vocational expert was asked to assume a person of plaintiff's age, education and work experience, who could perform sedentary work with a sit/stand option, no stair climbing, unprotected heights, driving, climbing, or working around hazardous machinery. (Tr. 404) The ALJ also added that the individual could perform only simple, routine work–not more than a few steps to complete assigned tasks–which was low stress with limited contact with others. The vocational expert opined that such a person could perform entry level unskilled jobs such as sorter (2200 jobs regionally), inspector (2100 jobs) and assembler (3000 jobs). (Tr. 405) The ALJ found that between September 8, 1999, to January 30, 2003, plaintiff, though unable to

perform his past work, retained the ability for sedentary work including the above listed jobs. As of January, 2003 (at the time of plaintiff's hip replacement) he had the capacity for less than sedentary work, but that this period lasted only until July 31, 2003. Consequently, the ALJ denied benefits.

*Hip Pain*

In October, 1999, plaintiff was seen for left hip and groin pain at St. John's Hospital. He was admitted and the doctors discussed his condition with him and his wife. (Tr. 135-136) Osteomyelitis with possible septic arthritis of the left hip was diagnosed following an orthopedic consultation and lab results were positive for Staphylococcus. (Tr. 139, 169) He underwent a procedure with Dr. Perry as the surgeon and pathology results were negative for malignancy. (Tr. 171) He underwent physical therapy. (Tr. 190) In March, 2000, Dr. Perry gave plaintiff a release to return to work with restrictions; the employer could not meet those restrictions so plaintiff remained off work on long term disability from Chrysler. In September, 2000, Dr. Perry reported that plaintiff is better overall. He has good days and bad days and on good days he does not even limp. He gets stiff when he sits for long periods of time. Dr. Perry opined that plaintiff was okay to do intermittent standing but should not do any heavy lifting. He should do part time standing a couple of hours a day and then not do any lifting more than twenty pounds and no twisting or turning. (Tr. 197) In December, 2000, plaintiff reported to Dr. Perry that he was doing better after recovering from left hip surgery. He has some good days and some bad days when the hip hurts. He walked with a noticeable limp. Plaintiff was advised that he was ultimately going to need a hip replacement and was to return in four to six months. (Tr. 196)

In April, 2001, Dr. Johnson noted that plaintiff is more active. There was no guarding and increased motion of the left lower extremity. (Tr. 256) In February, 2002, plaintiff's x-rays from St. John's showed advanced osteoarthritic changes of the left hip. (Tr. 347) In July, 2002, Dr. Shreve-Nicolai, M.D., saw plaintiff for hip pain. She diagnosed with x-rays degenerative

joint disease with changes at the left hip. (Tr. 346) Plaintiff was given a work release and was to be reassessed in five days. Id.

In November, 2002, plaintiff was again seen for hip pain in the after hours clinic by Dr. Shreve-Nicolai, M.D. (Tr. 344) X-rays were taken but there was no evidence of acute infection. He did have severe degenerative joint disease with bone on bone at the hip. He was scheduled for a follow up with Dr. Perry. (Tr. 344-5) In December, 2002, plaintiff was admitted to the hospital for gallstones. Hip surgery was postponed until that resolved. (Tr. 360)

In January, 2003, plaintiff underwent a total hip arthroplasty with an implant. (Tr. 348) There were no complications. (Tr. 350) In February, 2003, he was two weeks from the surgery. He was doing toe-touch and weight bearing. The implant was noted to be in perfect position. Physical therapy was scheduled. (Tr. 360) On May 1, 2003, Dr. Perry reports that plaintiff was three months from the left hip replacement and was "really happy with it." He still limped a little bit but the motion was satisfactory and the implant was in wonderful position. He was to continue to walk, strengthen, and do his therapy exercises. It was expect that he could return to work in three months. (Tr. 369) Plaintiff was released to return to work on July 31, 2003. (Tr. 370)

*Mental Status*

The medical evidence indicates that plaintiff had an acute major depressive and suicidal attempt with pills in May, 1998. (Tr. 122) This incident followed a recent separation from his wife. He was hospitalized briefly. At the time he was working as an assembly line worker at Chrysler. (Tr. 131)

In 1999 and 2000, Linda Bartoll, a social worker, counseled plaintiff for his depression and post-divorce therapy. She opined that plaintiff's mood was angry, as his benefits had been stopped. She thought that he was frustrated with his finances and his inability to return to work because of his health. In her opinion, his symptoms would interfere with his ability to maintain

reliable attendance in a work setting. (Tr. 217-248) She reported his GAF as 52. (Tr. 210) This indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

Plaintiff underwent a mental status report in October, 2000. He had been divorced and was recovering from the staph infection. (Tr. 191-195) Plaintiff's contact with reality was intact. He walked with a limp and displayed an appropriate range of affect. His mood was euthymic and he was friendly and cooperative. (Tr. 193) Although he had mild panic attacks two years earlier, it was felt that his could be related to the stressors in his life or his non-functioning thyroid. (Tr. 195) The diagnoses were major depressive disorder, single episode in partial remission, and his GAF was 63. (Tr. 195)

*Argument on Appeal*

On appeal, the plaintiff argues that the ALJ failed to give appropriate weight to the decision of Dr. Johnson, his treating physician, who opined in April 2001 that plaintiff could not stand/walk/sit on a sustained basis. (Tr. 250) It should be noted that a statement by plaintiff's physician that he or she is "disabled" or "unable to work" does not mean the defendant will determine that individual plaintiff is disabled. The defendant is responsible for reviewing the medical findings and other evidence that support a physician's statement of disability and determine whether or not said individual is disabled. 20 C.F.R. §404.1527.

In <u>Duncan v. Secretary of HHS</u>, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard. 20 C.F.R. § 404.1529 (1995). A finding of disability cannot be based solely on subjective allegations of pain. There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be

expected to give rise to the alleged pain. Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991). Here, plaintiff has demonstrated a severe hip problem. In October, 2000, Dr. Johnson reports that plaintiff is improved. (Tr. 258) Dr. Perry in March 2000 released plaintiff to return to work, albeit with restrictions of not lifting more than twenty pounds and no prolonged standing. Dr. Johnson's progress notes from Hampton Medical Center in April 2001 show that plaintiff "relates he is more active. He is able to get up and around more with less pain. Still limited." (Tr. 256) Thus, Dr. Johnson's completion of the form indicating that plaintiff is unable to sit/stand/walk seems to be at odds both with the opinion of Dr. Perry and also his own progress notes. While it is clear that plaintiff had significant difficulties, it is not shown that he was unable to do the limited work identified by the ALJ. Dr. Johnson's opinion is not consistent with the plaintiff's testimony nor with his statements to his social worker regarding his level of activity and ability to work. Further, sometimes Dr. Johnson reports plaintiff's problem as dealing with the left hip and sometimes with the right hip, so one would question just how careful he was in his opinion. With respect to plaintiff's testimony, plaintiff stated that he did landscape work in the summer of 2001 (Tr. 381) and that his work restriction in 2000 had focused mainly on sitting and standing. At the December, 2004 hearing, the VE identified more than 7000 jobs that plaintiff could perform. The ALJ reasonably relied on this opinion in determining that plaintiff was not entitled to benefits.

     Neither does plaintiff's mental impairment of depression mean that he was disabled. While he had moderate or less impairment in social functioning, based on his GAF scores, he himself stated that his mood fluctuated and was related to his divorce and readjustment. The ALJ appropriately took these limitations into account in determining plaintiff's residual functional capacity.

After carefully considering the medical evidence and the briefs, the court concludes that the defendant's decision is supported by substantial evidence and the decision denying benefits should be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                         s/Virginia M. Morgan
                         Virginia M. Morgan
                         United States Magistrate Judge

Dated: April 25, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 25, 2008.

                         s/Jane Johnson
                         Case Manager to
                         Magistrate Judge Virginia M. Morgan